## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **CLOUD CONTROLS LLC,** | |
| Plaintiff, | |
| **v.** | Case No.  2:24-cv-925 |
| **SAMSUNG ELECTRONICS CO., LTD.,** and **SAMSUNG ELECTRONICS AMERICA, INC.,** | JURY TRIAL DEMANDED |
| Defendants. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cloud Controls LLC ("CC" or "Plaintiff") files this Original Complaint for patent infringement against Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung") alleging as follows:

## BACKGROUND AND NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.   This case asserts infringement of United States Patent Nos. 7,167,703 (the "'703 Patent"), 8,195,087 (the "'087 Patent"), 8,200,866 (the "'866 Patent"), 9,585,003 (the "'003 Patent"), and 10,025,552 (the "'552 Patent") (collectively, "the Patents-in-Suit").

2.      The Patents-in-Suit are owned by CC.

## THE PARTIES

3.      Cloud Controls LLC is a limited liability company filed under the laws of the State of Texas, with its principal place of business at 5900 Balcones Drive, Suite 100, Austin TX 78731.

4.      Defendant Samsung Electronics Co., Ltd. is a corporation organized and existing

organized under the laws of South Korea.  It has its principal place of business at 129 Samsung-Ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, 443-742, South Korea.  SEC designs, manufactures, makes, uses, imports into the United States, sells, and/or offers for sale in the United States SEC smartphones and tablets.  SEC's smartphones and tablets are marketed, used, offered for sale, and/or sold throughout the United States, including within this district.  SEC may be served at least by process under the Hague Convention.

5.      Defendant Samsung Electronics America, Inc. is a corporation organized under the laws of the State of New York.  Its principal place of business is at 85 Challenger Rd., Ridgefield Park, New Jersey 07660.  SEA is a wholly owned subsidiary of SEC and oversees domestic sales and distribution of Samsung's consumer electronics products, including the products accused of infringement in this case.  SEA may be served via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

6.      This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

7.      The Court has personal jurisdiction over each Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.

8.      Each Defendant has regularly and systematically transacted business in Texas, directly or through subsidiaries or intermediaries, and/or committed acts of patent infringement in Texas as alleged more particularly below.

9.      Samsung has placed infringing products into the stream of commerce by shipping

those products into Texas or knowing that the products would be shipped into Texas.

10.    In addition, on information and belief, Samsung's business relating to mobile devices, including devices accused of infringement in this Action, are conducted at its Texas facilities.

11.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

12.    With respect to Defendant SEC, a Korean company, venue is proper because suits against foreign entities are proper in any judicial district, including the Eastern District of Texas.

13.    With respect to Defendant SEA, venue is proper in this district under 28 U.S.C. §1400(b) because Defendant SEA has a regular and established place of business in this district and has committed acts of infringement in this district.

14.    On information and belief, Defendant SEA has a regular and established place of business in Plano, Texas, and is responsible for importing and selling smartphones, tablets, and other mobile devices and equipment in the United States.

15.    Samsung makes, uses, sells, offers for sale, and/or imports Samsung-branded smartphones, tablets, laptops, and other electronics in this District, including the products accused of infringement herein.

16.    On information and belief, Defendant SEA has operated, and on information and belief continues to operate, a permanent office located at 6625 Excellence Way, Plano, TX 75023.

17.    Defendant SEA also employs full-time personnel, such as engineers and managers in this district, including in Collin County.

18.    On information and belief, Samsung's business operations relating to cellular mobile devices are conducted at these SEA facilities located in this district.

19.    Defendant SEA has also committed acts of infringement in this district by

commercializing, marketing, selling, distributing, and servicing certain Samsung-branded devices, including but not limited to phones and tablets, which are devices Plaintiff accuses of infringement in this action.

## THE PATENTS-IN-SUIT

### The '552 Patent

20.     The '552 Patent, titled "Selective Locking of Input Controls of a Portable Media Player," was issued on July 17, 2018, and expires on January 8, 2028.  A copy of the '552 Patent is attached as Exhibit A.

21.     The claims of the '552 Patent are not directed to an abstract idea.  For example, claim 1 of the '552 Patent recites a system for the selective locking of user controls in a portable media player.  When enabled, the selective locking system prevents operation of input controls on the portable media player made by the user based on whether the device is in a locked state, as well as the individual operation mode.  In some embodiments, the portable media player can predictively or automatically select the lock state and individual operation mode.  Taken as a whole, the claimed inventions of the '552 Patent are not limited to well-understood, routine, or conventional activity.  For example, as the '552 Patent explains, conventional media player devices caused "many users [to] be undesirably restricted by current player locking mechanisms."  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of portable media players.

22.     The written description of the '552 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the

invention.

23.    CC is the owner and assignee of all rights, title, and interest in and under the '552

Patent.

24.    CC has standing to sue for infringement of the '552 Patent.

**The '087 Patent**

25.    The '087 Patent, titled "Controlling of Wireless Connection of a Portable Device

Including an Illuminating Component or Switch," was issued on June 5, 2012, and expires on

January 8, 2028.  A copy of the '087 Patent is attached as Exhibit B.

26.    The claims of the '087 Patent are not directed to an abstract idea.  For example,

claim 1 of the '087 Patent recites a system for connecting a portable media player with a wireless

communications network.  The portable media player includes an actuator associated with an

illumination component that is configured to communicate with a wireless communication

component.  In some embodiments, the illumination component indicates a communications state

of the wireless connection component via a mode of illumination.  Taken as a whole, the claimed

inventions of the '087 Patent are not limited to well-understood, routine, or conventional activity.

For example, as the '087 Patent explains, "wireless connectivity is not established in most players"

and "users may find it difficult to manage or properly utilize the wireless capabilities of a portable

music player."  Accordingly, the claimed inventions include inventive components that improve

upon the functioning and operation of portable media players.

27.    The written description of the '087 Patent describes in technical detail each of the

limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how

the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the

invention.

28.    CC is the owner and assignee of all rights, title, and interest in and under the '087 Patent.

29.    CC has standing to sue for infringement of the '087 Patent.

**The '003 Patent**

30.    The '003 Patent, titled "Serving Data/Applications from a Wireless Mobile Phone," was issued on February 28, 2017, and expires on November 10, 2025.  A copy of the '003 Patent is attached as Exhibit C.

31.    The claims of the '003 Patent are not directed to an abstract idea.  For example, claim 1 of the '003 Patent recites a specific method for serving data or applications from mobile devices.  The mobile devices work with computing devices such as client computers, domain name servers, proxy servers, and other phones equipped with the technology to practice the method.  The method involves the mobile device establishing a data connection to a data network and a computing device locating the data or application on the mobile device, among other things.  Taken as a whole, the claimed inventions of the '003 Patent are not limited to well-understood, routine, or conventional activity.  For example, the '003 Patent explains that the user's wireless mobile phones, domain name servers, and proxy servers implement nonconventional "logic and functions to bridge the fact that [the user's wireless mobile phone] generally does not have a persistent connection to the Internet, nor a persistent IP address."  Accordingly, the claimed inventions include inventive components that improve upon the methods of serving data.

32.    The written description of the '003 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time

of the invention.  CC is the owner and assignee of all rights, title, and interest in and under the '003

Patent.

33.     CC has standing to sue for infringement of the '003 Patent.

**The '866 Patent**

34.     The '866 Patent, titled "Reduced Keypad for a Mobile Communication Device for

Predictive Input," was issued on June 12, 2012, and expires on December 6, 2026.  A copy of the

'866 Patent is attached as Exhibit D.

35.     The claims of the '866 Patent are not directed to an abstract idea.  For example,

claim 1 of the '866 Patent recites a reduced keypad for a mobile device that operates with a

predictive word generator.  The reduced keypad contains input keys with one or more alphabetic

or numeric values.  When a user presses an input key, the predictive word generator generates

words for the user to use in communicating with another user.  Taken as a whole, the claimed

inventions of the '866 Patent are not limited to well-understood, routine, or conventional activity.

For example, the '866 Patent explains that "[p]roviding a user-friendly interface, however, can be

a challenge for manufacturers because of the limited surface area available on the usually handheld

devices."  The claimed invention provides nonconventional keypad functionality to "provide a

reduced set of word collisions when using predictive input for entering alphabetic values in the

English language, thus making textual input faster and more efficient for a user."  Accordingly,

the claimed inventions include inventive components that improve upon the functioning and

operation of mobile devices.

36.     The written description of the '866 Patent describes in technical detail each of the

limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how

the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.   CC is the owner and assignee of all rights, title, and interest in and under the '866 Patent.

37.    CC has standing to sue for infringement of the '866 Patent.

**The '703 Patent**

38.    The '703 Patent, titled "Wireless Mobile Image Messaging," was issued on January 23, 2007, and expires on September 14, 2024.  A copy of the '703 Patent is attached as Exhibit E.

39.    The claims of the '703 Patent are not directed to an abstract idea.  For example, claim 10 of the '703 Patent recites an image message system on a  mobile device capable of sending messages to another mobile device to facilitate communication between the users.  The image message system may include categories of messages such as a location image category, a mood image category, or an activity message category among other categories.  The mobile device contains a storage medium containing a number of programming instructions and a processor that operate together to send the images from one device to another.  Taken as a whole, the claimed inventions of the '703 Patent are not limited to well-understood, routine, or conventional activity. For example, the '703 Patent explains that wireless mobile devices at the time of the claimed inventions had "limited input capabilities."  The claimed invention provides nonconventional devices and methods for "facilitating non-verbal communications between users of wireless mobile devices, such as cellular telephones, using image messages."  Accordingly, the claimed inventions include inventive components that improve upon the functioning and operation of the sending and receiving of image messages between users of mobile devices.

40.    The written description of the '703 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.  CC is the owner and assignee of all rights, title, and interest in and under the '703 Patent.

41.    CC has standing to sue for infringement of the '703 Patent.

**GENERAL ALLEGATIONS OF PATENT INFRINGEMENT**

42.    As detailed below and in the accompanying claim charts (Exhibits F-J), Samsung has infringed (and continues to infringe) one or more claims of the Patents-in-Suit by making, using, selling, offering for sale, and/or importing into the United States at least the following products (the "Accused Products"):  Samsung Cloud, Samsung Galaxy A30s, Samsung Galaxy A31, Samsung Galaxy A32, Samsung Galaxy A32 4G, Samsung Galaxy A33 5G, Samsung Galaxy A34 5G, Samsung Galaxy A35 5G, Samsung Galaxy A42 5G, Samsung Galaxy A50, Samsung Galaxy A50s, Samsung Galaxy A51, Samsung Galaxy A52s, Samsung Galaxy A52s 5G, Samsung Galaxy A53, Samsung Galaxy A54, Samsung Galaxy A54 5G, Samsung Galaxy A70, Samsung Galaxy A70s, Samsung Galaxy A71 5G, Samsung Galaxy A72 5G, Samsung Galaxy A73 5G, Samsung Galaxy A80, Samsung Galaxy F55 5G, Samsung Galaxy M42 5G, Samsung Galaxy M52 5G, Samsung Galaxy Note 10 Lite, Samsung Galaxy Note10, Samsung Galaxy Note10+, Samsung Galaxy Note10+ 5G, Samsung Galaxy Note20 5G, Samsung Galaxy Note20 Ultra 5G, Samsung Galaxy S Light Luxury, Samsung Galaxy S10 Lite, Samsung Galaxy S20 FE, Samsung Galaxy S20 FE 5G, Samsung Galaxy S21 Plus 5G, Samsung Galaxy S21 Ultra, Samsung Galaxy S21 FE 5G, Samsung Galaxy S22 Plus, Samsung Galaxy S22 Ultra, Samsung Galaxy S22, Samsung

Galaxy S23 Plus 5G, Samsung Galaxy S23 Ultra, Samsung Galaxy S23 FE, Samsung Galaxy S23 5G, Samsung Galaxy S24 Plus 5G, Samsung Galaxy S24 Ultra, Samsung Galaxy S24 5G, Samsung Galaxy Z Flip 3 256GB, Samsung Galaxy Z Flip4 5G, Samsung Galaxy Z Flip5 5G, Samsung Galaxy Z Fold4 5G, Samsung Galaxy Z Fold5 5G, Samsung Sound Tower MX-T40, Samsung Sound Tower MX-T50, Samsung Sound Tower MX-T70, and other Samsung devices which include the infringing features.

43.    Samsung's acts of infringement have caused damage to CC.  CC is entitled to recover from Samsung the damages sustained by CC as a result of Samsung's wrongful acts in an amount subject to proof at trial.

44.    Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Samsung's willful infringement of the Patents-in-Suit.

45.    For each count of infringement listed below, CC incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '552 PATENT

46.    CC incorporates herein the allegations made in paragraphs 1 through 45.

47.    Samsung has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '552 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

48.    An exemplary claim chart demonstrating Samsung's infringement of the '552 Patent is attached as Exhibit F and incorporated herein by reference.

49.    Samsung has had knowledge of the '552 Patent and of its infringement of the '552

Patent at least through the service of this Complaint.

50.     On information and belief, despite Samsung's knowledge of the '552 Patent and of its infringement of the '552 Patent, Samsung has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '552 Patent.

51.     On information and belief, Samsung's actions represented a specific intent to induce infringement of at least claim 1 of the '552 Patent.   For example, Samsung offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '552 Patent via at least their use of the Accused Products.

52.     Since issuance of the '552 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '552 Patent or that would otherwise require marking under 35 U.S.C. § 287.

53.     CC may recover pre-suit damages for Samsung's infringement of the '552 Patent under 35 U.S.C. § 287.

54.     As a result of Samsung's infringement of the '552 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

55.     Additionally, on information and belief, Samsung has also indirectly infringed one or more claims of the '552 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '552 Patent.  Samsung has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '552 Patent by using the Accused Products. Samsung took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '552 Patent, including, for example, Claim 1 of the '552 Patent.  Such steps by

Samsung included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Samsung performed these steps, which constitute induced infringement with the knowledge of the '552 Patent and with the knowledge that the induced acts constitute infringement. Samsung was aware that the normal and customary use of the Accused Products by others would infringe the '552 Patent.

56.     Samsung has also indirectly infringed by contributing to the infringement of the '552 Patent. Samsung has contributed to the direct infringement of the '552 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '552 Patent, including, for example, claim 1 of the '552 Patent. The special features include, for example, the selective locking system recited in claim 1, wherein the user may prevent any user input on the portable media player when user locks it. The special features constitute a material part of the invention of one or more of the claims of the '552 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Samsung's contributory infringement is ongoing.

57.     Samsung's direct and indirect infringement of the '552 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT II – INFRINGEMENT OF THE '087 PATENT

58.     CC incorporates herein the allegations made in paragraphs 1 through 57.

59.      Samsung has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '087 Patent, including, for example, claim 1, in violation of 35 U.S.C. §

271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

60.     An exemplary claim chart demonstrating Samsung's infringement of the '087 Patent is attached as Exhibit G and incorporated herein by reference.

61.     Samsung has had knowledge of the '087 Patent and of its infringement of the '087 Patent at least through the service of this Complaint.

62.     On information and belief, despite Samsung's knowledge of the '087 Patent and of its infringement of the '087 Patent, Samsung has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '087 Patent.

63.     On information and belief, Samsung's actions represented a specific intent to induce infringement of at least claim 1 of the '087 Patent.   For example, Samsung offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '087 Patent via at least their use of the Accused Products.

64.     Since issuance of the '087 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '087 Patent or that would otherwise require marking under 35 U.S.C. § 287.

65.     CC may recover pre-suit damages for Samsung's infringement of the '087 Patent under 35 U.S.C. § 287.

66.     As a result of Samsung's infringement of the '087 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

67.     Additionally, on information and belief, Samsung has also indirectly infringed one or more claims of the '087 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly

infringe the '087 Patent.  Samsung has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '087 Patent by using the Accused Products. Samsung took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '087 Patent, including, for example, Claim 1 of the '087 Patent.  Such steps by Samsung included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Samsung performed these steps, which constitute induced infringement with the knowledge of the '087 Patent and with the knowledge that the induced acts constitute infringement.  Samsung was aware that the normal and customary use of the Accused Products by others would infringe the '087 Patent.

68.    Samsung has also indirectly infringed by contributing to the infringement of the '087 Patent.  Samsung has contributed to the direct infringement of the '087 Patent by its customers, partners, personnel, contractors, clients, and suppliers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '087 Patent, including, for example, claim 1 of the '087 Patent.  The special features include, for example, the portable media player system recited in claim 1, wherein the illumination component indicates a communication state of the wireless connection.  The special features constitute a material part of the invention of one or more of the claims of the '087 Patent and are not staple articles of commerce suitable for substantial non-infringing use.  Samsung's contributory infringement is ongoing.

69.     Samsung's direct and indirect infringement of the '087 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

### COUNT III – INFRINGEMENT OF THE '003 PATENT

70.     CC repeats and re-alleges the allegations in Paragraphs 1-69 as though fully set forth in their entirety.

71.     Samsung has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '003 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products and the Samsung Cloud Service.

72.     An exemplary claim chart demonstrating Samsung's infringement of the '003 Patent is attached as Exhibit H and incorporated herein by reference.

73.     Samsung has had knowledge of the '003 Patent and of its infringement of the '003 Patent at least through the service of this Complaint.

74.     On information and belief, despite Samsung's knowledge of the '003 Patent and of its infringement of the '003 Patent, Samsung has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '003 Patent.

75.     On information and belief, Samsung's actions represented a specific intent to induce infringement of at least claim 1 of the '003 Patent.   For example, Samsung offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '003 Patent via at least their use of the Accused Products and the Samsung Cloud Service.

76.     Since issuance of the '003 Patent, neither CC nor its predecessors or licensees

have made, offered for sale, sold, or imported a product or service that practices any claim of the '003 Patent or that would otherwise require marking under 35 U.S.C. § 287.

77.     CC may recover pre-suit damages for Samsung's infringement of the '003 Patent under 35 U.S.C. § 287.

78.     As a result of Samsung's infringement of the '003 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

79.     Additionally, on information and belief, Samsung has also indirectly infringed one or more claims of the '003 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '003 Patent.  Samsung has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '003 Patent by using the Accused Products and the Samsung Cloud Service.   Samsung took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products and the Samsung Cloud Service in a manner that infringes one or more claims of the '003 Patent, including, for example, Claim 1 of the '003 Patent.  Such steps by Samsung included, among other things, advising or directing end-users and other third-parties to use the Accused Products and the Samsung Cloud Service in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner.  Samsung performed these steps, which constitute induced infringement with the knowledge of the '003 Patent and with the knowledge that the induced acts constitute infringement.  Samsung was aware that the normal and customary use of the Accused Products and the Samsung Cloud Service by others would infringe the '003 Patent.

80. Samsung has also indirectly infringed by contributing to the infringement of the '003 Patent. Samsung has contributed to the direct infringement of the '003 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '003 Patent, including, for example, claim 1 of the '003 Patent. The special features include, for example, serving data or applications from mobile devices. The special features constitute a material part of the invention of one or more of the claims of the '003 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Samsung's contributory infringement is ongoing.

81. Samsung's direct and indirect infringement of the '003 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT IV – INFRINGEMENT OF THE '866 PATENT

82. CC repeats and re-alleges the allegations in Paragraphs 1-81 as though fully set forth in their entirety.

83. Samsung has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '866 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

84. An exemplary claim chart demonstrating Samsung's infringement of the '866 Patent is attached as Exhibit I and incorporated herein by reference.

85. Samsung has had knowledge of the '866 Patent and of its infringement of the '866 Patent at least through the service of this Complaint.

86. On information and belief, despite Samsung's knowledge of the '866 Patent and of

its infringement of the '866 Patent, Samsung has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '866 Patent.

87.    On information and belief, Samsung's actions represented a specific intent to induce infringement of at least claim 1 of the '866 Patent.   For example, Samsung offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '866 Patent via at least their use of the Accused Products.

88.    Since issuance of the '866 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '866 Patent or that would otherwise require marking under 35 U.S.C. § 287.

89.    CC may recover pre-suit damages for Samsung's infringement of the '866 Patent under 35 U.S.C. § 287.

90.    As a result of Samsung's infringement of the '866 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

91.    Additionally, on information and belief, Samsung has also indirectly infringed one or more claims of the '866 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '866 Patent.  Samsung has induced end-users and other third-parties to directly infringe (literally or under the doctrine of equivalents) the '866 Patent by using the Accused Products. Samsung took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '866 Patent, including, for example, Claim 1 of the '866 Patent.  Such steps by Samsung included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the

Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Samsung performed these steps, which constitute induced infringement with the knowledge of the '866 Patent and with the knowledge that the induced acts constitute infringement. Samsung was aware that the normal and customary use of the Accused Products by others would infringe the '866 Patent.

92.     Samsung has also indirectly infringed by contributing to the infringement of the '866 Patent. Samsung has contributed to the direct infringement of the '866 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '866 Patent, including, for example, claim 1 of the '866 Patent. The special features include, for example, the reduced keypad and predictive word generator recited in claim 1, including the interrelation between the input keys and predictive word generator. The special features constitute a material part of the invention of one or more of the claims of the '866 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Samsung's contributory infringement is ongoing.

93.     Samsung's direct and indirect infringement of the '866 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## COUNT V – INFRINGEMENT OF THE '703 PATENT

94.     CC repeats and re-alleges the allegations in Paragraphs 1-93 as though fully set forth in their entirety.

95.     Samsung has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '703 Patent, including, for example, claim 10, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States

infringing products including, but not limited to, the Accused Products.

96.    An exemplary claim chart demonstrating Samsung's infringement of the '703 Patent is attached as Exhibit J and incorporated herein by reference.

97.    Samsung has had knowledge of the '703 Patent and of its infringement of the '703 Patent at least through the service of this Complaint.

98.    On information and belief, despite Samsung's knowledge of the '703 Patent and of its infringement of the '703 Patent, Samsung has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '703 Patent.

99.    On information and belief, Samsung's actions represented a specific intent to induce infringement of at least claim 10 of the '703 Patent.   For example, Samsung offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '703 Patent via at least their use of the Accused Products.

100.    Since issuance of the '703 Patent, neither CC nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '703 Patent or that would otherwise require marking under 35 U.S.C. § 287.

101.    CC may recover pre-suit damages for Samsung's infringement of the '703 Patent under 35 U.S.C. § 287.

102.    As a result of Samsung's infringement of the '703 Patent, CC has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

103.    Additionally, on information and belief, Samsung has also indirectly infringed one or more claims of the '703 Patent in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '703 Patent.  Samsung has induced end-users and other third-parties to directly infringe

(literally or under the doctrine of equivalents) the '703 Patent by using the Accused Products. Samsung took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '703 Patent, including, for example, Claim 10 of the '703 Patent. Such steps by Samsung included, among other things, advising or directing end-users and other third-parties to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Products in an infringing manner. Samsung performed these steps, which constitute induced infringement with the knowledge of the '703 Patent and with the knowledge that the induced acts constitute infringement. Samsung was aware that the normal and customary use of the Accused Products by others would infringe the '703 Patent.

104.    Samsung has also indirectly infringed by contributing to the infringement of the '703 Patent. Samsung has contributed to the direct infringement of the '703 Patent by its customers, partners, personnel, contractors, clients, and suppliers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '703 Patent, including, for example, claim 10 of the '703 Patent. The special features include, for example, sending image messages from one mobile device to another. The special features constitute a material part of the invention of one or more of the claims of the '703 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Samsung's contributory infringement is ongoing.

105.    Samsung's direct and indirect infringement of the '703 Patent was willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

CC requests that the Court find in its favor and against Samsung, and that the Court grant CC the following relief:

a.      Judgment that one or more claims of the Patents-in-Suit have been infringed, either literally or under the doctrine of equivalents, by Samsung or all others acting in concert therewith;

b.      Judgment that Samsung accounts for and pays to CC all damages to and costs incurred by CC because of Samsung's infringing activities and other conduct complained of herein;

c.      Judgment that Samsung's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.      Pre-judgment and post-judgment interest on the damages caused by Samsung's infringing activities and other conduct complained of herein;

e.      That this Court declare this an exceptional case and award CC its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f.      All other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 13, 2024          Respectfully submitted,


By: /s/ *Fred I. Williams*
Fred I. Williams
Texas State Bar No. 07034855
Lea N. Brigtsen
Texas State Bar No. 24054504
Stephen R. Dartt
Texas State Bar No. 24042370
Eric R. Carr
Texas State Bar No. 24091261
WILLIAMS SIMONS & LANDIS PLLC
The Littlefield Building
601 Congress Ave., Suite 600
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
lbrigtsen@wsltrial.com
sdartt@wsltrial.com
ecarr@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite 125, #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Cloud Controls LLC*